UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

IN RE:

LINNEA DAWN MARTINEZ,

Debtor

Chapter 7

Bankruptcy No. 25-00898

## OPINION AND ORDER ON DEBTOR'S MOTION FOR SANCTIONS VIOLATION OF THE AUTOMATIC STAY

This matter came before the Court for a telephonic hearing on December 12, 2025, on Debtor's Motion for Sanctions for Violation of the Automatic Stay (Doc. 26). Linnea Dawn Martinez ("Debtor") appeared pro se. Attorney Adam J. Babinat appeared for Cedar Falls Utilities ("CFU"). The Court heard argument and took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### I. STATEMENT OF THE CASE

Debtor's Chapter 7 petition and Amended Schedules listed CFU as a creditor that provided pre-petition services. Debtor's Motion for Sanctions for Violation of the Automatic Stay alleges that after the bankruptcy filing, CFU violated the stay when it requested a security deposit and later refused to refund it in full. CFU filed a response, objecting to these allegations. For the reasons stated below, the Court

finds that CFU has not violated the automatic stay and Debtor's Motion should be denied.

## II. Findings of Fact

CFU is a public utility that provides water, gas, electricity, internet, and telephone services to Cedar Falls residents. Debtor, a Cedar Falls resident, paid for and received electricity, gas, water, sewer, and refuse services. Five days before Debtor filed for bankruptcy, CFU disconnected Debtor's services for unpaid debts. After receiving notice of the filing, CFU created a new account for Debtor and reconnected her services.

A month later, Debtor called CFU to add internet services to her account. CFU informed Debtor over the phone and by letter that including internet services would require a $325 security deposit to secure Debtor's account for any post-petition defaults. Debtor paid the security deposit.

A few weeks later, Debtor canceled the internet services and sought a full refund of the security deposit. CFU agreed to refund only the amount equivalent to one-months' worth of internet services but kept the remainder to secure payment for the services Debtor would continue to receive. The same day, Debtor filed a Motion for Sanctions for Violation of the Automatic Stay, arguing that: (1) CFU's request for a security deposit was an impermissible attempt to collect dischargeable debt, and (2) CFU's refusal to refund the entire security deposit violated the automatic stay.

### III. DISCUSSION

A bankruptcy filing immediately triggers the automatic stay of section 362. 11 U.S.C. § 362. The automatic stay prohibits "the commencement or continuation of an action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case." In re Edwards, 601 B.R. 660, 663 (B.A.P. 8th Cir. 2019); 11 U.S.C. § 362(a)(1). The prohibition includes actions "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). See, e.g., In re Goodfellow, 298 B.R. 358, 362 (Bankr. N.D. Iowa 2003) (holding that the creditor's continuous threats by phone to coerce the debtor to pay pre-petition debts violated the automatic stay).

Debtor's main contention is that both CFU's request for a security deposit and refusal to refund the full amount violated the automatic stay. CFU argues that no stay violation occurred because, as a utility provider, it is entitled to request adequate assurance of payment in the form of a security deposit. Section 366 provides a debtor's rights and obligations when seeking to maintain utility services after filing a bankruptcy petition. Martinez v. Autoridad De Acueductos y Alcantarillados (In re Martinez), 504 B.R. 722, 728 (Bankr. D. P.R. 2014). Section 366 states:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor

3

> solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366(a), (b). Section 366 recognizes that debtors "rely on the continuation of utility services throughout the pendant duration of their bankruptcy proceedings."[1] In re Martinez, 504 B.R. at 728. Congress established section 366 to "prevent the threat of termination from being used to collect pre-petition debts that would not otherwise force utility companies to provide services that they may never receive payment for." Id. at 729 (citing Begley v. Phila. Elec. Co., 760 F.2d 46, 49 (3rd Cir. 1985)). Without this section, a utility company could coerce debtors to pay their pre-petition debts as these services are necessary and may be unavailable elsewhere. In re Sanchez, 545 B.R. 55, 58 (Bankr. D.N.M. 2016). "Section 366(a) bans utility companies from altering, refusing, or discontinuing service to, or

---

[1] In enacting section 366, Congress "intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." H.R. Rep. No. 95-595 at 350 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963.

4

discriminating against, a trustee or a debtor solely on the grounds that the debtor has not paid its prepetition debts when due." In re Martinez, 504 B.R. at 729. See also In re Moorefield, 218 B.R. 795, 796 (Bankr. M.D. N.C. 1997) (further noting that section 366 "was proposed to prohibit a utility company from abandoning a debtor."). Accordingly, this provision is commonly regarded as an extension of the automatic stay. 3 Collier on Bankruptcy ¶ 366.02 (16th ed.). A utility found in violation of section 366 may receive consequences similar to those of a stay violation. Id. ¶ 366.06.

    Section 366(a) is qualified by section 366(b). In re Martinez, 504 B.R. at 729–30. Under section 366(b), if the debtor fails to provide adequate assurance of payment, utility companies can alter, refuse or discontinue service. 11 U.S.C. § 366(b); In re Gur-Meat, Inc., 657 B.R. 675, 679 (Bankr. D. P.R. 2024). A debtor may provide an adequate assurance "in the form of a deposit or other security." 11 U.S.C § 366(b). "If a debtor fails to provide adequate assurance of payment, . . . [s]ection 366(b) grants utility companies the unilateral right to terminate service." In re Martinez, 504 B.R. at 730 (citing Johnson v. Phila. Elec. Co., 80 B.R. 30, 31 (E.D. Pa. 1987); MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communs., Inc.), 262 B.R. 893 (D. Del. 2001); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 588 (6th Cir. 1990)). The Debtor does not dispute that CFU is a utility to which section

366 applies. CFU argues it did not violate the stay because the deposit it requested was "adequate assurance" under section 366(b). The Court agrees.

Here, CFU's request for the deposit is the basis of Debtor's motion. Debtor's argument that this request was an attempt to engage in illegal debt-collection activity is without merit. CFU's request for a security deposit to secure post-petition services—which occurred 47 days after the petition was filed— did not violate the automatic stay.

## IV. CONCLUSION

For the reasons stated above, Debtor's Motion for Sanctions for Violation of the Automatic Stay is **DENIED**.

Ordered:
March 12, 2026

Thad J. Collins
Chief Bankruptcy Judge